UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:18-cv-02381-CMA<br>) |
| CLOVIS ONCOLOGY, INC.,<br>PATRICK J. MAHAFFY, and<br>ERLE T. MAST | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION AND MEMORANDUM OF LAW FOR AN ORDER APPROVING A DISTRIBUTION PLAN

**MOTION**

Plaintiff, United States Securities and Exchange Commission (the "Commission"), moves the Court for an order approving a plan to distribute more than $20 million to compensate harmed Clovis Oncology, Inc. ("Clovis") investors for their losses ("Distribution Plan"). A copy of the Distribution Plan for the Fair Fund is attached as Exhibit 1 to the Motion..

**MEMORANDUM OF LAW**

**I.     BACKGROUND**

On September 18, 2018, the Commission filed a complaint (the "Complaint")[1] against Clovis Oncology, Inc. ("Clovis") and Patrick J. Mahaffy ("Mahaffy"), its Chief Executive Officer, and Erle T. Mast ("Mast"), its former Chief Financial Officer (collectively, the "Defendants").

---
[1] Docket No. 1.

1

The Complaint alleged that, over a four-month period starting in July 2015, Clovis and Mahaffy misled investors about how well Clovis' flagship lung cancer drug Rociletinib worked compared to another drug. Clovis raised approximately $298 million in a public stock offering in July 2015 but saw its stock price collapse in November 2015 after disclosing that the effectiveness rate was actually 28 percent, versus the 60 percent efficacy figure that had been touted in the company's investor presentations, press releases, and SEC filings. The company stopped development on the drug in May 2016. The Commission alleged, in part, that Clovis violated Section 17(a)(2) of the Securities Act of 1933 and Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 12b-20 and 13a-11 thereunder.

The Defendants were ordered to pay a total of $20,804,145 in disgorgement, prejudgment interest, and penalties to the Commission. On September 24, 2018, Defendants paid the entire amount of their judgments to the Commission.

On July 2, 2019, the Court established a Fair Fund (the "Fair Fund"), pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, so the penalties paid, along with the disgorgement and prejudgment interest, can be distributed to investors harmed by the Defendants' conduct described in the Complaint. The Court also appointed Miller Kaplan Arase LLP as the Tax Administrator to fulfill the tax obligations of the Fair Fund.

On December 2, 2019 Epiq Systems ("Epiq") was appointed as the Distribution Agent of the Fair Fund to assist in overseeing the administration of the distribution of the Fair Fund in consultation with Commission staff, pursuant to the terms of a distribution plan to be approved by this Court.

The Fair Fund has been deposited in an interest-bearing account at the United States Department of Treasury's Bureau of Fiscal Service. The current balance of the fund, as of January

25, 2021, is $21,304,263.67.

## II. ARGUMENT

### A. The Applicable Standard

Nearly every plan to distribute funds obtained in a Commission enforcement action requires choices to be made regarding the allocation of funds between and among potential claimants within the parameters of the amounts recovered. In recognition of the difficulty of this task, Courts historically have given the Commission significant discretion to design and set the parameters of a distribution plan. *See, e.g.*, *SEC v. Great White Marine & Rec., Inc.*, 428 F.3d 553, 556 (5th Cir. 2005); *SEC v. Forex Asset Management LLC*, 242 F.3d 325, 331 (5th Cir. 2001); *SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997); *SEC v. Wang*, 944 F.2d 80, 83-84 (2d Cir. 1991); *SEC v. Levine*, 881 F.2d 1165, 1182 (2d Cir. 1989).

The Court's review of a proposed Fair Fund distribution plan focuses on whether the plan is fair and reasonable. See *Official Committee of Unsecured Creditors of Worldcom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006) ("[u]nless the consent decree specifically provides otherwise[,] once the district court satisfies itself that the distribution of proceeds in a proposed SEC disgorgement plan is fair and reasonable, its review is at an end") citing *Wang*, 944 F.2d at 85.

For the reasons articulated below, the Commission submits that the proposed distribution plan for the Clovis Fair Fund constitutes a fair and reasonable allocation of the funds available for distribution and should be approved.

### B. The Commission's Proposed Distribution Plan Provides A Fair and Reasonable Allocation of the Clovis Fair Fund

The Fair Fund will be distributed to Eligible Claimants pursuant to the terms of the Plan of Allocation, attached to the Distribution Plan as Exhibit A. Eligible Claimants[2] will include: (1)

---

[2] All capitalized terms are as defined in the Distribution Plan.

people or entities who filed approved claims in the class action litigation *Medina v. Clovis Oncology, Inc., et al.*, Civil Action No.1:15-cv-2546-RM-MEH (D. Colo. Aug. 4, 2017) (the "Class Action") by December 22, 2020; (2) people or entities whose claims were denied in the Class Action but whom are able to cure all deficiencies on their claim in this proceeding by the Claims Bar Date; and (3) those investors who filed an exclusion from the class in connection with the class notice portion of the Class Action ("opted out"), and have filed a valid Claim Form with the Distribution Agent, so long as any of the investors who fall into these three categories are determined by the Distribution Agent to be eligible for a distribution from the Fair Fund.

The Recognized Loss Per Share shall be calculated for each purchase of Clovis common stock during the Relevant Period that was accepted as part of the Class Action or that is listed on a Claim Form and for which adequate documentation is provided. The Relevant Period will be between July 7, 2015 and November 13, 2015. The "FIFO" methodology will be used for computation of recognized losses per share for Eligible Claimants who made multiple transactions in Eligible Securities during the Relevant Period. Should the total Eligible Loss Amounts (the sum of the Recognized Loss Per Share) for all Eligible Claimants exceed the Net Available Fair Fund, the Distribution Agent will distribute funds to the Eligible Claimants based upon a *pro rata* distribution formula. A *de minimis* of $10.00 will be imposed and if an Eligible Claimant's Distribution Payment is less than $10.00, the Eligible Claimant will not be included in the calculation and the funds will be distributed to other Eligible Claimants with Distribution Payments greater than the Minimum Distribution Amount.

### C. Disposition of Remaining Funds

Upon submission by the Distribution Agent of the final accounting to the Commission, the Commission staff will file a motion with this Court to approve the final accounting, which will

include a recommendation as to the final disposition of the Residual, consistent with *SEC v. Liu*, 140 S. Ct. 1936 (2020). If distribution of the Residual to investors is infeasible, the Commission staff may recommend the transfer of the Residual to the general fund of the U.S. Treasury subject to Section 21F(g)(3) of the Exchange Act.[3]

## III. CONCLUSION

**WHEREFORE,** the Commission respectfully requests that this Court grant the Commission's Motion for an order approving the Distribution Plan for the Fair Fund, and grant such other relief that the court deems just and proper.

Dated: February 8, 2021

Respectfully submitted,
/s/ Susan S. Pecaro
Susan S. Pecaro
Devon A. Brown
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5876
Telephone No.: (202) 551-4489 (Pecaro)
(202) 551-4582 (Brown)
Email: pecaros@sec.gov (Pecaro)
Brownde@sec.gov (Brown)

---

[3] Section 21F(g)(3) of the Exchange Act, 15 U.S.C. § 78u-6(g)(3), provides, in relevant part, that any monetary sanction of $200 million or less collected by the SEC in any judicial action brought by the SEC under the securities laws that is not added to a disgorgement fund or Distribution Fund or otherwise distributed to victims, plus investment income, shall be deposited or credited into the SEC Investor Protection Fund.